**Otto HALPERN, Plaintiff-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

No. 352, Docket 24701.

United States Court of Appeals
Second Circuit.

Argued June 13, 1958.

Decided Aug. 4, 1958.

Raymond J. McElhannon, New York City (Joseph M. Fitzpatrick, New York City, Ward, Neal, Haselton, Orme & McElhannon, New York City, of counsel), for plaintiff-appellant.

Paul W. Williams, U. S. Atty., S. D. N. Y., New York City (Morton S. Robson, Asst. U. S. Atty., New York City, of counsel), for defendant-appellee.

Before HINCKS and WATERMAN, Circuit Judges, and RYAN, District Judge.

WATERMAN, Circuit Judge.

The Invention Secrecy Act of 1951, 35 U.S.C. §§ 181–188, provides for non-disclosure of information contained in patent applications when certain officials of the United States believe that disclosure would be inimical to the national interest. The result is that the inventor does not receive a patent until the necessity for secrecy ceases and hence he is unable to exploit the fruits of his labor. In order to protect the inventor and to encourage the discovery of inventions having military application, the inventor whose patent has been withheld under a secrecy order has a right created by the act to obtain compensation from the United States, and the act sets forth alternative procedures whereby this right may be realized. These procedures are set forth in the act with a majestic simplicity that disregards the manifold problems engendered by the creation of the remedy. The instant appeal brings several of these problems before us, to wit, (1) whether a patent applicant can maintain an action in the district court to recover just compensation during the pendency of a secrecy order; (2) if so, whether a trial *in camera* is authorized by the act or is inherent in the power of the court; and (3) whether the privilege of the United States against the revelation of state secrets is waived or otherwise affected by the act.

The case comes to us on the pleadings, and the pertinent facts contained therein may be easily stated. Appellant, Otto Halpern, alleges that in 1941 he discovered an invention which he realized had important military application. He approached the Office of Scientific and Research Development and explained the scientific principles of his invention.

Interest was expressed and appellant was referred to the Radiation Laboratory of the Massachusetts Institute of Technology. Subsequently appellant entered into a contract with this institution for the development of the invention. This contract provided that appellant's prior discovery was to remain his personal property but that any further inventions or improvements were to be the property of the Radiation Laboratory. During the following year, 1942, while appellant was in the employ of the Radiation Laboratory, the invention was reduced to practice. Appellant continued in the employ of the Radiation Laboratory until May 1945, during which time numerous modifications and improvements of the original invention were developed.

In March 1945 appellant filed an application for a patent covering his initial invention of 1941. On May 3, 1945, the Commissioner of Patents found that the disclosure of the contents of the patent application would be detrimental to the public safety and defense and entered a secrecy order pursuant to former 35 U.S.C. § 42 (1942 ed.). As a result of this order no patent was issued to the appellant. Since that time the necessity for the continuance of the secrecy order has been periodically reconsidered by officials of the United States. The last such occasion was July 25, 1956, when it was determined that the order could not yet be rescinded or modified without prejudicing the national security.

In July 1951 the United States Patent Office notified appellant that fourteen of the claims contained in his 1945 patent application were allowable, but that a patent could not issue because of the pendency of the secrecy order. Thereafter appellant filed claims for compensation for the use of his invention with the Departments of Defense, Army, Navy and Air Force. His claims were eventually denied and in April 1956 appellant brought the present action to recover damages resulting from the secrecy order and compensation for the

use of his invention by the United States. The jurisdiction of the district court was based on 35 U.S.C. § 183. A second cause of action sought damages under the Mutual Security Act of 1954, 22 U.S.C. § 1758, for the alleged unauthorized disclosure of his invention by the United States to various foreign powers.[1]

The United States moved to dismiss the complaint without prejudice and, in the alternative, to stay prosecution of the action for an indefinite period. Its primary contention was that 35 U.S.C. § 183 does not authorize maintenance of an action for compensation during the pendency of a secrecy order. However, the United States raised additional matters, including the alleged lack of authority of the district court to conduct a trial *in camera* and the privilege of the United States relating to state secrets. With its moving papers the United States filed a formal claim of privilege by the Secretary of the Navy, which stated that "the plaintiff's patent application and all documents, statements and testimony which relate, or may relate, to the technical subject matter thereof * * * are military and naval secrets, classified as such at my personal direction. Production or release of this classified information would seriously hamper the administration of the Navy's research program, would prejudice the security of the United States and would not be in the public interest." In addition, the United States submitted an affidavit of the Director of the Patents Legal Division, Office of Naval Research, and one of the Judge Advocate General of the Navy, asserting that the release of any of the information contained in the application would endanger national security.

The only information concerning the nature of the information covered by the patent application which counsel has been authorized by the Secretary of the Navy to disclose to the court is that it "deals with a manner and means whereby an object may escape observation and detection by radar."

The district court in a thorough opinion of Judge Edelstein held that 35 U.S.C. § 183 did not authorize commencement of an action until after a secrecy order had been rescinded and, treating the Government's motion to dismiss as a motion under Rule 12(b) (1), F.R. Civ.P., 28 U.S.C., dismissed the complaint for lack of jurisdiction over the subject matter. D.C.S.D.N.Y.1957, 151 F.Supp. 183. This appeal followed.

The present 35 U.S.C. §§ 181–188, now known as the Invention Secrecy Act of 1951, were enacted in July 1952 as part of a general revision and codification of the patent laws. Their provisions are substantially identical with those of 66 Stat. 4, former 35 U.S.C. §§ 151–159, which was in fact the Invention Secrecy Act of 1951. Previous laws dealing with the same subject matter, particularly an act of July 1, 1940, 54 Stat. 710, which was derived from an act of October 6, 1917, 40 Stat. 394, dealt only with the secrecy of inventions during time of war. A fundamental purpose of the Invention Secrecy Act was to continue in peacetime the authority to prevent the dissemination of information contained in patent applications whenever the disclosure of such information by the issuance of a patent would jeopardize the national security.

The means by which this purpose is accomplished remain fundamentally the same as in the earlier act. Section 181 of the act empowers the Commissioner of Patents to issue an order of secrecy and withhold the grant of a patent when notified by the secretary of a defense department or certain other officials that in their opinion "the publication or disclosure of the invention by the grant-

---

[1] Because of the manner in which we dispose of the issues relating to the Invention Secrecy Act, it is unnecessary for us to consider whether appellant states a cause of action under the Mutual Security Act of 1954. It may be necessary, however, for the district court to pass on this question at some time in the future.

ing of a patent therefor would be detrimental to the national security * * *."[2] Section 182 seeks to enforce the secrecy order by providing that disclosure by the inventor to unauthorized sources without the consent of the Commissioner of Patents may work a forfeiture of his right to a patent. Section 186 provides

criminal penalties for willful disclosure or publication.

Along with this emphasis on secrecy, however, the 1952 Act evinces a strong concern that inventors be encouraged to discover inventions having military value and to submit them to the United States. Section 183,[3] entitled "Right to

2. The pertinent provisions of 35 U.S.C. § 181 are as follows:

"§ 181. *Secrecy of certain inventions and withholding of patent.*

   *     *     *     *     *

"Whenever the publication or disclosure of an invention by the granting of a patent, in which the Government does not have a property interest, might, in the opinion of the Commissioner, be detrimental to the national security, he shall make the application for patent in which such invention is disclosed available for inspection to the Atomic Energy Commission, the Secretary of Defense, and the chief officer of any other department or agency of the Government designated by the President as a defense agency of the United States.

"Each individual to whom the application is disclosed shall sign a dated acknowledgment thereof, which acknowledgment shall be entered in the file of the application. If, in the opinion of the Atomic Energy Commission, the Secretary of a Defense Department, or the chief officer of another department or agency so designated, the publication or disclosure of the invention by the granting of a patent therefor would be detrimental to the national security, the Atomic Energy Commission, the Secretary of a Defense Department, or such other chief officer shall notify the Commissioner and the Commissioner shall order that the invention be kept secret and shall withhold the grant of a patent for such period as the national interest requires, and notify the applicant thereof. Upon proper showing by the head of the department or agency who caused the secrecy order to be issued that the examination of the application might jeopardize the national interest, the Commissioner shall thereupon maintain the application in a sealed condition and notify the applicant thereof. The owner of an application which has been placed under a secrecy order shall have a right to appeal from the order to the Secretary of Commerce under rules prescribed by him.

"An invention shall not be ordered kept secret and the grant of a patent

withheld for a period of more than one year. The Commissioner shall renew the order at the end thereof, or at the end of any renewal period, for additional periods of one year upon notification by the head of the department or the chief officer of the agency who caused the order to be issued that an affirmative determination has been made that the national interest continues so to require. An order in effect, or issued, during a time when the United States is at war, shall remain in effect for the duration of hostilities and one year following cessation of hostilities. An order in effect, or issued, during a national emergency declared by the President shall remain in effect for the duration of the national emergency and six months thereafter. The Commissioner may rescind any order upon notification by the heads of the departments and the chief officers of the agencies who caused the order to be issued that the publication or disclosure of the invention is no longer deemed detrimental to the national security."

3. In its entirety, 35 U.S.C. § 183 reads as follows:

"§ 183. *Right to compensation.*

"An applicant, his successors, assigns, or legal representatives, whose patent is withheld as herein provided, shall have the right, beginning at the date the applicant is notified that, except for such order, his application is otherwise in condition for allowance, or February 1, 1952, whichever is later, and ending six years after a patent is issued thereon, to apply to the head of any department or agency who caused the order to be issued for compensation for the damage caused by the order of secrecy and/or for the use of the invention by the Government, resulting from his disclosure. The right to compensation for use shall begin on the date of the first use of the invention by the Government. The head of the department or agency is authorized, upon the presentation of a claim, to enter into an agreement with the applicant, his successors, assigns, or legal representatives, in full settlement for the damage and/or use. This settlement agreement shall be conclusive for all purposes not-

compensation," creates a right in the applicant "for compensation for the damage caused by the order of secrecy and/or for the use of the invention by the Government \* \* \*." This right begins on the date of first use of the invention by the Government and may be availed of when the applicant is notified that the claims contained in his application are allowed, or February 1, 1952, whichever is later. The right is limited to a period ending six years after the issuance of the patent.

The 1952 act offers two alternative methods of securing the right of "just compensation" to the patent applicant whose patent has been withheld under a secrecy order. One method, carried over from the 1940 act, is to wait until the patent is issued and then bring suit in the Court of Claims for compensation. Since the patent can be issued only after revocation of the secrecy order, 35 U.S.C. § 181, such an action cannot be brought until after the secrecy order is rescinded. Obviously this procedure is not available to appellant since the secrecy order is still in effect and no patent has been issued.

But Congress apparently thought that this remedy was not sufficient to do justice to the rightful claims of inventors whose applications dealt with matters of a secret nature. The alternative procedure added by the 1952 act provides for an administrative award followed by a court action to review the award. The claimant, upon receiving notice that except for the secrecy order his patent application is otherwise in condition for allowance, may apply to the department head who caused the secrecy order to be issued for compensation for use of the invention by the United States and for the damages resulting from the order. The department head is authorized to make full settlement of the claim. If full settlement of the claim cannot be effected, the department head may pay up to 75 per cent of the amount which he considers to be just compensation, and the claimant " \* \* \* may bring suit against the United States in the Court of Claims or in the District Court of the United States for the district in which such claimant is a resident for an amount which when added to the award shall constitute just compensation for the damage and/or use of the invention by the Government \* \* \*." There is no express language requiring that the secrecy order be rescinded before such an action is commenced.

The United States contends that the failure of the 1952 act to condition an action for compensation in the district court on the lifting of the secrecy order is inadvertent, and that the statutory purpose of secrecy would be nulli-

withstanding any other provision of law to the contrary. If full settlement of the claim cannot be effected, the head of the department or agency may award and pay to such applicant, his successors, assigns, or legal representatives, a sum not exceeding 75 per centum of the sum which the head of the department or agency considers just compensation for the damage and/or use. A claimant may bring suit against the United States in the Court of Claims or in the District Court of the United States for the district in which such claimant is a resident for an amount which when added to the award shall constitute just compensation for the damage and/or use of the invention by the Government. The owner of any patent issued upon an application that was subject to a secrecy order issued pursuant to section 181 of this title,

who did not apply for compensation as above provided, shall have the right, after the date of issuance of such patent, to bring suit in the Court of Claims for just compensation for the damage caused by reason of the order of secrecy and/or use by the Government of the invention resulting from his disclosure. The right to compensation for use shall begin on the date of the first use of the invention by the Government. In a suit under the provisions of this section the United States may avail itself of all defenses it may plead in an action under section 1498 of title 28. This section shall not confer a right of action on anyone or his successors, assigns, or legal representatives who, while in the full-time employment or service of the United States, discovered, invented, or developed the invention on which the claim is based."

fied if the act were interpreted so as to permit such an action during the pendency of the secrecy order. In support of this contention the United States argues that there is no logical basis for inferring an intention to distinguish between the rights of those inventors who apply for administrative compensation (and hence may bring an action in a district court) and those who do not so apply but await the issuance of the patent before instituting suit in the Court of Claims; that the right to sue in a district court was inserted only to make it clear that the inventor would not be limited to the award granted to him administratively; and that the specific statutory provisions depriving an inventor of any rights in the event of an unauthorized disclosure and subjecting him to criminal penalties would be meaningless if the statute permits a public hearing in a district court on the patent. To appellant's argument that a trial *in camera* would eliminate any danger to the national security, the United States replies that a trial *in camera* is not authorized by the act or by judicial precedent, that there is serious doubt whether court personnel are within the group to which the secrecy order permits disclosure, and finally that a trial *in camera* would not provide effective protection to the national interest in secrecy. In addition, the United States contends that its privilege with respect to state secrets has been properly asserted, and that on this ground alone the complaint should be dismissed since it is apparent from the nature of the action that its prosecution and defense would require a violation of the privilege. United States **v.**

Reynolds, 1952, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727; Totten v. United States, 1875, 92 U.S. 105, 23 L.Ed. 605.

We think that these arguments must be considered together since the resolution of each is dependent upon the proper meaning of the somewhat cryptic language of Congress. Moreover, to merely resolve the first question, whether the act permits the maintenance of an action for compensation in the district court during the pendency of a secrecy order, will be quite meaningless unless that question is resolved in favor of the United States. For if we reverse and remand, holding only that the district court had jurisdiction, the district court is without guidance on the other issues, either of which can be dispositive of the case. If no *in camera* trial can be held, appellant's action clearly must fail, for all concede that to hold a public hearing with respect to the matters involved in this case would violate the spirit if not the language of the act. And, unless the compensation provisions of the act are held to waive or otherwise affect the privilege of the United States with respect to state secrets, appellant must fail on remand, for the United States has asserted its privilege in a proper manner and it is apparent that this action cannot be prosecuted or defended without divulging military secrets.[4] Thus the various issues in the case are so interrelated that we think we must, in interpreting the statute, consider each of them.

As we have pointed out above, the 1940 act provided the inventor whose application had been placed under a secrecy order with only a single remedy,

4. The district court held that the claim of privilege by the United States was premature. 151 F.Supp. 183, 185. We disagree. It is true that most of the cases dealing with the question of privilege arise out of attempts to compel testimony concerning, or discovery of documents containing, privileged information. However, in the Totten case, supra, cited with approval in the Reynolds case, 345 U.S. 1, 11 note 26, 73 S.Ct. 528, the

Supreme Court expressly approved the dismissal of an action in advance when it was obvious from the subject matter of the action that a trial would necessarily require the revelation of secret information. 92 U.S. 105, 107. See also, Firth Sterling Steel Co. v. Bethelehem Steel Co., C.C.E.D.Pa.1912, 199 F. 353; Tucker v. United States, 1954, 118 F.Supp. 371, 127 Ct.Cl. 477.

and this remedy was specifically circumscribed by the requirement that the applicant had the right to sue "if and when he ultimately receives a patent * * *." Since no patent could issue while a secrecy order was in effect, the 1940 act made the lifting of the secrecy order a jurisdictional prerequisite to suit.

The 1952 act effected a considerable change in the provisions relating to compensation of inventors. The administrative procedure by which an applicant could obtain an award for the use of his invention was not conditioned upon the lifting of the secrecy order. On the contrary, the plain wording of the act is that "An applicant * * * whose patent is withheld as herein provided, shall have the right, *beginning at the date the applicant is notified that, except for such order, his application is otherwise in condition for allowance * * * to apply * * * for compensation * * *.*" (Emphasis added.) Appellant was so notified in July 1951 prior to the filing of his application for an administrative award and long before the commencement of this action. Thus it is clear that Congress created an administrative procedure which might be utilized by an applicant as soon as he was notified that his claims were allowed (or February 1, 1952, whichever is later). Indeed we do not understand that the United States contends otherwise.

The statute then goes on to authorize an administrative settlement award. The right of action in the district court, provided for the first time in the 1952 act and crucial here, follows immediately after the sentence dealing with administrative settlement:

> " * * * A claimant may bring suit against the United States in the Court of Claims or in the District Court of the United States for the district in which such claimant is a resident for an amount which when added to the award shall constitute just compensation for the damage and/or use of the invention by the Government * * *."

No further limitation by way of a different date for bringing suit is stated and it is the natural inference that such a suit may be maintained immediately following the unsuccessful pursuit of the administrative application. We have already held that once the patent has been issued the denial of an award, as well as the making of a partial award which is unsatisfactory to the applicant, justifies the commencement of an action in the district court. Robinson v. United States, 2 Cir., 1956, 236 F.2d 24. We conclude that the statutory language authorizes the maintenance of suit, even though the patent has not yet issued, as soon as the administrative application is denied or results in an award unsatisfactory to the applicant. The fact that the secrecy order is still pending does not deprive the district court of jurisdiction.

Although we concede that the statutory language does not require this interpretation, we think that we have given the language employed by Congress its plain and natural meaning. Our conclusion is supported by other provisions of the 1952 act which show an increased solicitude on the part of Congress for the rights of inventors whose applications are placed under secrecy orders. Section 181, for example, provides for a right of appeal to the Secretary of Commerce from a secrecy order. It states that "An invention shall not be ordered kept secret and the grant of a patent withheld for a period of more than one year," and provides that further secrecy shall be justified each year by an affirmative determination that "the national interest continues so to require * * *." We have also considered the relatively sparse legislative history of the 1952 act and find some support in a substantially identical paragraph contained in the House and Senate Reports on the bill indicating that

the 1952 act, unlike its 1940 predecessor, does not "defer presentation of a claim for compensation until after a patent issues on the application."[5]

We therefore turn to the other issues raised on this appeal—whether the act authorizes a trial *in camera,* and whether the privilege with respect to state secrets prevents a trial on the merits. As previously indicated, we think these matters have an important bearing on the issue of statutory interpretation and have thus considered them.

Congress, in our view, has authorized the federal courts to entertain actions brought prior to the lifting of a secrecy order by applicants who have unsuccessfully applied for an administrative award. Clearly Congress failed to spell out in detail the incidents of this authority. But we cannot assume that Congress vested the federal courts with merely administrative responsibilities, see Federal Radio Commission v. General Electric Co., 1930, 281 U.S. 464, 50 S.Ct. 389, 74 L.Ed. 969, or created a remedy which is entirely illusory. Congress must have foreseen that a public trial was an impossibility in cases of this kind, and in vesting jurisdiction in the district court to entertain such an action it implicitly empowered the district court to tailor the procedure within reasonable limits to meet individual situations.

Under the circumstances of this case, we are not convinced that a trial *in camera* is either undesirable or unfeasible. Appellant states that the only witnesses are ones who will know all about the invention, and, even if some do not, they can be kept in an anteroom until called. It should not be difficult to obtain a court reporter and other essential court personnel with the necessary security clearance. If necessary, the stenographers who are now writing letters concerning this invention for the Department of the Navy can be utilized to record the testimony. We do not decide, however, that the district court is required to hold an *in camera* proceeding, but merely that it should do so if in its opinion such a proceeding can be held without running any serious risk of divulgence of military secrets.

The assertion by the United States of its privilege with respect to state secrets is, we think, governed by similar considerations. Congress has created rights which it has authorized federal district courts to try. Inevitably, by their very nature, the trial of cases involving patent applications placed under a secrecy order will always involve matters within the scope of this privilege. Unless Congress has created rights which are completely illusory, existing only at the mercy of government officials, the act must be viewed as waiving the privilege. Of course, any such waiver is dependent upon the availability and adequacy of other methods of protecting the overriding interest of national security during the course of a trial.

Congress has empowered the federal district courts to adjudicate just compensation for inventors such as appellant. It has also provided for secrecy when necessary in the national interest. If possible, both statutory objectives should be carried out. We think that a flexible procedure in which the district court determines questions relating to the Government's privilege, as well as the mode of trial, with a discretion molded by a desire to achieve both ob-

---

5. S.Rep. No. 1001, 82d Cong., 2d Sess. (1951); H.Rep. No. 1028, 82d Cong., 2d Sess. (1951). See U.S.Code Congressional and Administrative News 1952, pp. 1321, 1323. The United States places some reliance on the hearings on the act conducted by a subcommittee of the Committee on the Judiciary of the House of Representatives. These hearings have not been published and are not available to us. Apparently they were not available to members of Congress other than the members of this particular subcommittee. Consequently, we think these hearings cannot be used to fathom the intent of Congress. Cf. concurring opinion of Mr. Justice Jackson in Schwegmann Bros. v. Calvert Distillers Corp., 1951, 341 U.S. 384, 395, 71 S.Ct. 745, 95 L.Ed. 1035.

jectives, will best effectuate the statutory purpose.

The cases relied on by the United States, United States v. Reynolds, 1952, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727, and Totten v. United States, 1875, 92 U.S. 105, 23 L.Ed. 605, are distinguishable. Neither of these cases involved a specific enabling statute contemplating the trial of actions that by their very nature concern security information. Moreover, these cases were attempts to obtain unauthorized disclosures of secret information. In the Reynolds case the plaintiffs sought to obtain secret information for use in litigation. In the Totten case the Court stressed in its opinion the confidential relationship existing there between the parties, and the opinion primarily turned on the breach of contract which the Court found occurred by the very bringing of the action. In the instant case appellant is not seeking to obtain secret information which he does not possess. Nor do we think that disclosure to a federal district court in an *in camera* proceeding would be an unauthorized disclosure prohibited by the secrecy order, since that order as modified permits disclosure to any "officer * * * of any department * * * of the Government of the United States" who is "concerned directly in an official capacity" with the subject matter of the order.[6] Finally, the scope of the privilege of the United States with respect to state secrets, like its similar privilege to withhold the identity of confidential informants, "is limited by its underlying purpose." Roviaro v. United States, 1957, 353 U.S. 53, 60, 77 S.Ct. 623, 627, 1 L.Ed.2d 639. Just as the informer's privilege is no longer applicable when the identity of the informer has been disclosed to those who would have cause to resent the communication, Roviaro v. United States, supra, so the privilege relating to state secrets

is inapplicable when disclosure to court personnel in an *in camera* proceeding will not make the information public or endanger the national security.

We conclude that the district court has jurisdiction to entertain the action during the pendency of the secrecy order; and we further conclude that a trial *in camera* in which the privilege relating to state secrets may not be availed of by the United States is permissible, if, in the judgment of the district court, such a trial can be carried out without substantial risk that secret information will be publicly divulged.

Reversed and remanded.

---

6. We note also that 35 U.S.C. § 187 provides that "The prohibitions and penalties of this chapter shall not apply to any officer or agent of the United States acting within the scope of his authority, nor to any person acting upon his written instructions or permission."