Eugene Emerson CLIFT, Appellant,

v.

UNITED STATES of America, Appellee.

No. 565, Docket 78-6163.

United States Court of Appeals,
Second Circuit.

Argued March 7, 1979.

Decided April 10, 1979.

Eugene Emerson Clift, pro se.

Bruce G. Forrest, Dept. of Justice, Washington, D.C. (Barbara Allen Babcock, Asst. Atty. Gen., Washington, D.C., Richard Blumenthal, U. S. Atty., New Haven, Conn., and Ronald R. Glancz, App. Staff, Civ. Div., Dept. of Justice, Washington, D.C., of counsel), for appellee.

Before FRIENDLY, SMITH and MANSFIELD, Circuit Judges.

FRIENDLY, Circuit Judge:

Eugene Emerson Clift, plaintiff in this action to recover compensation from the United States under the Invention Secrecy Act, 35 U.S.C. §§ 181–88, is the inventor of a cryptographic system now the subject of U.S. Patent 3,495,038. He appeals from orders of the District Court for Connecticut which denied his motion under F.R.Civ.P. 37 to compel the production of documents requested under F.R.Civ.P. 34, largely on the basis of the privilege with respect to secrets of state, and then dismissed the complaint because of his inability to proceed without the production that had been denied. We affirm the order denying the motion for production without prejudice to further consideration, but believe the judge acted too precipitately in dismissing the complaint and accordingly vacate that order.

The history of the controversy is as follows:

Clift filed an application for a patent for a cryptographic device on March 21, 1968. On November 6 he was informed that a secrecy order, see 35 U.S.C. § 181, had been issued with respect to the application. In February 1969 he filed an administrative claim for compensation under 35 U.S.C. § 183 for damages caused by the secrecy order and for use of the invention. The secrecy order was rescinded on June 12, 1969, and the patent issued on February 10, 1970. On January 23, 1970 the administrative claim was denied on the grounds that the Government had never used the invention and Clift had not submitted any evidence of damages from the secrecy order.

Six years later, Clift brought suit against the United States under 35 U.S.C. § 183, claiming damages from the secrecy order and from the Government's use of the invention. In an effort to show that the Government had used his invention, he moved under F.R.Civ.P. 37 for enforcement of a previous request under F.R.Civ.P. 34 for the production of seven categories of documents including contracts for the manufacture of various Government crypto devices, whose existence he claimed to have discovered through articles in newspapers and magazines. The Government responded that the requests were for items that either did not exist or constituted classified cryptographic information whose disclosure to unauthorized persons was made a criminal offense by 18 U.S.C. § 798. An affidavit from Admiral Inman, Director of the National Security Agency, confirmed that insofar as plaintiff requested production of contracts, these included the design, construction, maintenance or repair of cryptographic systems being developed by the Government, which have been and are properly classified as containing highly secret information and include military secrets of the United States, disclosure of which would seriously jeopardize the communications security mission of the National Security Agency and the interests of the United States.[1] Without ruling expressly on the

---

1. Although Admiral Inman's affidavit was limited to items 2, 3, 4 and 5 of plaintiff's request, the court evidently treated it as applicable to the other items if these in fact existed. On the

Government's contention that items 1, 6 and 7 did not exist, the judge sustained its claim that the documents sought to be discovered were privileged within F.R.Civ.P. 34 and denied the motion for discovery. She then added, apparently *sua sponte* :

> As public policy forbids the maintenance of any suit, the trial of which would inevitably lead to the disclosure of matters which the law itself regards as confidential, and respecting which it will not allow the confidence to be violated, (*Totten v. United States*, 92 U.S. [105,] 107, 23 L.Ed. 605 [1875]) and since, in any case, plaintiff cannot proceed further without the information he seeks, the Court in the exercise of its inherent power to control process hereby dismisses this suit.

■ Plaintiff, appearing *pro se*, appeals from these determinations. Although orders refusing to compel the production of documents "are usually routine, non-appealable interlocutory orders", 9 Moore, Federal Practice ¶ 110.13[2] at 157 (1975), in this case plaintiff is appealing from the dismissal of his action and "the appellate court will determine all matters appropriately raised without regard to the interlocutory decree below." *Id.* ¶ 110.25 at 273–74 and cases cited in note 3 thereto. Here the denial of the motion for discovery was the very basis for the order of dismissal and is thus reviewable.

■ Plaintiff makes two principal objections to the refusal of discovery on the basis of the secret nature of the information. The first is grounded on the statement in *United States v. Reynolds*, 345 U.S. 1, 7–8, 73 S.Ct. 528, 532, 97 L.Ed. 727 (1953), also dealing with a claim of military secrecy:

> There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer. [footnote omitted]

The Government answers that there was no need for a claim by the Secretary of Defense since the claim was made by Congress in 1951, when it enacted 18 U.S.C. § 798, making knowing and willful disclosure of classified cryptographic information to unauthorized persons a crime, and Admiral Inman's affidavit sufficiently showed that the requested items were within the statute. This answer is not so fully satisfying as the Government would have it. While the statute and Admiral Inman's affidavit may suffice to show that the claim of state privilege *could* be invoked with respect to the requested items, there remains the question whether it *should* be. The Court warned in *Reynolds* that the state secret privilege "is not to be lightly invoked", 345 U.S. at 7, 73 S.Ct. at 532, and quoted with approval, *id.* at 8 n. 20, 73 S.Ct. at 532 n. 20 the statement in *Duncan v. Cammell, Laird & Co.* [1942] A.C. 624, 638:

> The essential matter is that the decision to object should be taken by the minister who is the political head of the department, and that he should have seen and considered the contents of the documents and himself have formed the view that on grounds of public interest they ought not to be produced.  .  .  ."

The argument that the Court in *Reynolds* could not have meant to require invocation of the privilege by the head of the department when disclosure would be a crime overlooks that disclosure compelled by an officer by order of a federal court would not be a crime, since the officer would not have had the required criminal intent. On the other hand, the fact that Congress made disclosure of information covered by § 798 criminal without requiring, as in § 793, that the disclosure be done with intent or reason to believe that the information be used to the injury of the United States, while not decisive, reinforces our recognition of the peculiarly sensitive nature of cryptographic information. Under the circumstances presented here a requirement of the personal involvement of the Secretary of Defense

remand we are directing the court should make express findings on the claim of non-existence of items 1, 5 and 6, and if she should rule

against the Government on any item, afford it an opportunity to supplement the Inman affidavit.

would, as was said of the Secretary of HEW in *Association for Women in Science v. Califano*, 185 U.S.App.D.C. 19, 28, 566 F.2d 339, 348 (1977), "be of little or no benefit"—although even as to that there are conflicting considerations, as developed below. While we thus reject Mr. Clift's argument on the special facts here presented, the Government would be wiser not to put courts to this test in the future.

Mr. Clift's other objection is that the district court should have directed the documents to be produced to it *in camera*—a position he claims to be supported by *Halpern v. United States*, 258 F.2d 36 (2 Cir. 1958). Judge Waterman's perceptive opinion in that case indeed sets the framework within which this appeal must be viewed. As there stated, the Invention Secrecy Act sets forth procedures "with a majestic simplicity that disregards the manifold problems engendered by the creation of the remedy", 258 F.2d at 37. Recognizing the conflicting objectives of the Act—on the one hand, to preserve secrecy and, on the other, "a strong concern that inventors be encouraged to discover inventions having military value and to submit them to the United States," 258 F.2d at 39, this court concluded, 258 F.2d at 43:

> Congress must have foreseen that a public trial was an impossibility in cases of this kind, and in vesting jurisdiction in the district court to entertain such an action it implicitly empowered the district court to tailor the procedure within reasonable limits to meet individual situations.

Indicating that some of the Government's objections to an *in camera* trial in that case may have been exaggerated,[2] we directed the district court to conduct such a trial "if in its opinion such a proceeding can be held without running any serious risk of divulgence of military secrets." *Id.*

*Halpern* is claimed to be distinguishable on the basis that in effect use by the Government was there conceded, that Halpern knew what his invention was, that the dangers of an *in camera* trial were thus minimal, and that we left it to the district court to determine whether such a trial could safely be conducted. Except for the last, the distinctions are not overwhelming. Mr. Clift also knows what his invention is; indeed the world knows it as a result of the lifting of the secrecy order and subsequent issuance of the patent. While Halpern knew his own invention and apparently had some knowledge of the modifications, he did not know how extensively it was used, and these facts were state secrets. There may be more importance in the Government's tacit admission of use in *Halpern* and its strong denial here—a denial whose validity is reinforced by the lifting of the secrecy order only eight months after its issuance. On the other hand while we sympathize with the judge's admission that she would be unable to understand the significance of the documents without the aid of an independent expert, efforts could be made to locate such an expert with appropriate clearances.

■ We nevertheless sustain the judge's exercise of discretion in denying discovery at this time. *In camera* discovery would do no good unless any favorable results could be communicated to Mr. Clift, who admittedly no longer holds clearances. Moreover, we find merit in Chief Judge Haynsworth's statement in *Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1369 (4 Cir.), *cert. denied*, 421 U.S. 992, 95 S.Ct. 1999, 44 L.Ed.2d 482 (1975):

> It is not to slight judges, lawyers or anyone else to suggest that any such disclosure carries with it serious risk that highly sensitive information may be compromised. In our own chambers, we are ill equipped to provide the kind of security highly sensitive information should have.

---

2. It should not be difficult to obtain a court reporter and other essential court personnel with the necessary security clearance. If necessary, the stenographers who are now writing letters concerning this invention for the Department of the Navy can be utilized to record the testimony.

It would seem quite possible to have an *in camera* production in this case in a secured area at Fort Meade, where the documents are.

Without any motion by the Government requesting such relief, the Court dismissed the complaint for the reasons stated above. The cited case, *Totten v. United States*, 92 U.S. 105, 23 L.Ed. 605 (1875), affords no support for this. The Court there held that an action could not be maintained against the Government on a contract for secret services during the Civil War since the contract must be deemed to include an implied agreement of both parties "that the lips of the other were to be for ever sealed respecting the relation of either to the matter." 92 U.S. at 106. Mr. Clift entered into no contract; it was the Government that imposed secrecy on his patent application. Mr. Justice Field's statement "that public policy forbids the maintenance of any suit in a court of justice, the trial of which would inevitably lead to the disclosure of matters which the law itself regards as confidential, and respecting which it will not allow the confidence to be violated," must be read in context, and also in light of the Invention Secrecy Act as explicated in *Halpern, supra*, particularly 258 F.2d at 43. Moreover, Mr. Clift has not conceded that without the requested documents he would be unable to proceed, however difficult it might be to do so. More likely he would be better advised to wait and see whether improvements in the art or other developments might make it feasible for the Government to produce some documents under some safeguards. In time the cryptographic systems now considered so secret may be as obsolete as the giant computer that broke the German code in World War II. We therefore remand the case to the district court for further proceedings, including, if the court finds this desirable, the entry of an appropriate stay. Beyond this we suggest that the Government, in obedience to the desire of Congress manifested in the Invention Secrecy Act, should be as forthcoming as it can be without risk to the national interest and that in this difficult case Mr. Clift would benefit from the assistance of counsel, which he once had.

The order denying the motion for discovery is affirmed without prejudice to further consideration; the order dismissing the complaint is vacated and the cause is remanded for proceedings consistent with this opinion. No costs.