AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Western Electric Company, Inc., and Bell Telephone Laboratories, Inc., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 587–81C.

United States Claims Court.

Dec. 20, 1983.

James A. Curley, New York City, for plaintiffs.

Thomas J. Scott, Jr., Washington, D.C., with whom was Deputy Asst. Atty. Gen. Stuart E. Schiffer, Washington, D.C., for defendant.

1. Bell is jointly owned by American Telephone & Telegraph (AT & T) and AT & T's wholly-

## ORDER

COLAIANNI, Judge.

The present case, involving alleged patent infringements by the government, is now before the court on defendant's motion for a protective order arising out of plaintiffs' request for production of documents. Defendant asserts a state secrets privilege to bar discovery "regarding the function and operation of any cryptographic device." For the reasons stated below, defendant's motion is granted.

### Statement of Facts

Plaintiffs filed their petition in the United States Court of Claims on September 29, 1981, claiming jurisdiction under 35 U.S.C. § 183 (the Invention Secrecy Act) and 28 U.S.C. § 1498, seeking compensation for infringement of U.S. Patent No. 3,991,268, entitled "PCM Communication System with Pulse Deletion." For the purposes of this order, plaintiffs' statement of the underlying facts will be accepted as true.

The patent in suit disclosed the invention of William M. Goodall, a fulltime employee of Bell Telephone Laboratories (Bell).[1] That invention, as described at page 2 of the petition, was of—

> a pulse code modulation communication system utilizing code groups of pulse elements. In one aspect of the invention, individual pulse elements in code groups are suppressed and other pulse elements are substituted. The substituted pulse elements are subsequently recovered at a receiver. Another aspect of the invention pertains to encryption of signals in the pulse code modulation communication system.

The application for the patent in suit was filed in the United States Patent Office on December 24, 1948. At the request of the Department of the Army, the Commissioner of Patents issued a secrecy order on May 13, 1949, covering the application. That order was not lifted until June 13, 1975, at which

owned subsidiary, Western Electric.

time the Commissioner of Patents and Trademarks rescinded it at the request of the National Security Agency (NSA). The patent issued on November 9, 1976, to Bell.

Plaintiffs allege that at sometime on or after December 24, 1948, and continuing through the present, the government appropriated the Goodall invention, without license. They argue, "Because these systems and their procurements are maintained in secrecy by the government, petitioners are unable to state their claim at this time with more particularity." Petition at 5, 7.

Plaintiffs filed their first request for production of documents on February 11, 1982. That request named ten broad categories of documents, largely relating to: (1) numerous types of telecommunications equipment, (2) the Goodall patent or application, (3) defendant's assertion in its answer of the defenses of laches and estoppel, and (4) defendant's procurement of certain types of telecommunications equipment. Defendant responded on July 14, 1982, opposing portions of plaintiffs' request as overbroad and burdensome and moving for a protective order "that no discovery be had in this litigation regarding the function and operation of any cryptographic device." In support of its motion, defendant attached the affidavit of Secretary of Defense Caspar W. Weinberger. Secretary Weinberger asserted the state secrets privilege in resisting discovery of information concerning cryptographic devices. Only defendant's motion for a protective order is now being ruled upon by the court.

On August 20, 1982, plaintiffs opposed defendant's motion, advancing several arguments. First, plaintiffs noted their need for the information in order to prove the infringement suit. Second, plaintiffs "submit that the [state secrets] privilege cannot be used to prevent the plaintiffs from obtaining relevant evidence to prove their claim under the Invention Secrecy Act." Plaintiffs' reply brief at 4. In effect, plaintiffs argue that the Invention Secrecy Act contemplates a waiver of the privilege for state secrets, at least for those cases in which the trial judge can fashion discovery and trial "without substantial risk that secret information will be publicly divulged." *Id.* at 7, quoting *Halpern v. United States,* 258 F.2d 36, 44 (2d Cir.1958).

Third, plaintiffs argue that disclosure of the withheld documents will not compromise national security because plaintiffs American Telephone & Telegraph (AT & T) and Western Electric have been, or are, parties to many classified contracts with federal agencies, including the NSA. In addition, they have employees with the appropriate clearances to review the withheld documents and approved facilities in which to store them. Plaintiffs proposed a "solution to the discovery problem" by which cleared employees of AT & T and Western Electric would review all requested documents and screen out those unrelated to the patent in suit. Plaintiffs' reply brief at 16. The court would then impose a protective order permitting plaintiffs' counsel to inspect and copy all relevant documents.

Finally, plaintiffs contend that much of the withheld material is not secret. Plaintiffs ask the court to conduct an *in camera* review of all documents to assess the propriety of defendant's state secrets claim.

Defendant responded to plaintiffs' reply brief on September 7, 1982, specifically attacking each of plaintiffs' arguments. In support of its claim of state secrets privilege, defendant offered the affidavit of Mr. Howard E. Rosenblum, NSA's Deputy Director for Communications Security, for the court's *in camera* inspection. Defendant specifically requested that plaintiffs be barred from inspecting that document. On December 14, 1983, defendant submitted the affidavit for court review along with a classified documentary film that the affidavit incorporated by reference.

### Discussion

■ The state secrets privilege is a long-standing, evidentiary privilege that permits the government to resist discovery of evidence if disclosure "reasonably could be seen as a threat to the military or diplomatic interests of the nation." *Halkin v.*

*Helms,* 690 F.2d 977, 990 (D.C.Cir.1982); *see generally* Note, *The Military and State Secrets Privilege: Protection for the National Security or Immunity for the Executive?* 91 Yale L.J. 570 (1982). When properly invoked, the privilege is absolute. *Halkin v. Helms,* 690 F.2d at 990. No showing of need can overcome it. *Id.* The current standards for reviewing the assertion of state secrets privilege were largely established by *United States v. Reynolds,* 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953).

■ As an initial matter, this court rejects plaintiffs' assertion that the Invention Secrecy Act, 35 U.S.C. §§ 181–188, is a waiver of the state secrets privilege.[2] A similar argument concerning the Federal Tort Claims Act was rejected in *Reynolds.* 345 U.S. at 6, 73 S.Ct. at 531. As the *Reynolds* court noted, merely granting plaintiffs a right to sue does not waive the government's right to assert evidentiary privileges. The discovery rules of the court must be applied, and the state secrets privilege is "well established in the law of evidence." *Id.* at 6–7, 73 S.Ct. at 531.

*Reynolds* established both substantive and procedural requirements for invoking the privilege. As a procedural matter, *Reynolds* requires "a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *Id.* at 7–8, 73 S.Ct. at 532. (Footnotes omitted.)

The affidavit of Secretary Weinberger fully complies with this requirement. The NSA is a separately organized agency within the Department of Defense, under the direction, authority, and control of the Secretary of Defense. In his affidavit, Secretary Weinberger averred:

2. Plaintiffs cite *Halpern v. United States,* 258 F.2d 36 (2d Cir.1958), as authority for their assertion. Despite dicta to that effect, the *Halpern* court's holding was much more limited and closely tailored to that case's facts. The court stated, "[A]ny such waiver is dependent upon the availability and adequacy of other methods of protecting the overriding interest of national security during the course of a trial."

I have personally reviewed a listing of NSA's manuals and engineering bulletins that would be necessary to furnish to the Plaintiffs to comply with Plaintiffs' First Request for Production of Documents Under Rule 74," filed 11 February 1982 * * *. I have concluded on the basis of my personal knowledge and on my personal review of additional information available to me in my official capacity, including particularly the classified affidavit of NSA's Deputy Director for Communications Security, that the production of these documents by the NSA even under protected circumstances will directly affect adversely matters of continuing military and diplomatic secrecy, thereby necessitating a formal claim of privilege.

■ Although it noted the overriding importance of the state secrets privilege, the *Reynolds* court also established that the determination of whether the privilege was validly claimed must be made by the judiciary, not by the executive officer who claimed it. Still, the court may place great reliance on the agency's assertions. Writing for the court, Chief Justice Vinson stated:

> Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers. Yet we will not go so far as to say that the court may automatically require a complete disclosure to the judge before the claim of privilege will be accepted in any case. It may be possible to satisfy the court, from all the circumstances of the case, that there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged. When this is the case, the occasion for the privilege is appropriate, and the court should not jeopardize the security which the privilege is meant

*Id.* at 43. And "the privilege * * * is inapplicable when disclosure to court personnel in an *in camera* proceeding will not make the information public or endanger the national security." *Id.* at 44. In addition, the court found that "appellant is not seeking to obtain secret information which he does not possess." *Id.* That is exactly what plaintiffs are hoping to do in the present action.

to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers.

*Id.* at 9–10, 73 S.Ct. at 533. *In camera* review of each contested document, therefore, is not required if the court can determine, from other evidence and the circumstances, that the privilege was validly invoked. *See also Hayden v. National Security Agency/Central Security Service,* 608 F.2d 1381, 1387 (D.C.Cir.1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980). This court agrees with the *Hayden* court's determination that *in camera* review of the documents is unnecessary and inappropriate if the government proves its claim of privilege by affidavits. *See id.* Though *Hayden* concerned an agency assertion of state secrets privilege in opposition to Freedom of Information Act requests, the standard that court used when reviewing the claim of privilege applies equally here:

> If the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents. * * *
>
> In this scheme, *in camera* review is a "last resort" to be used only when the affidavits are insufficient for a responsible *de novo* decision.

*Id.* (Footnotes omitted.) At defendant's request, and in the interest of minimizing the risk of any disclosure of state secrets, the court declined to permit plaintiffs' counsel access to Mr. Rosenblum's affidavit. *Ex parte in camera* review of affidavits is entirely appropriate when disclosure of information in those affidavits could prejudice national security. *See Salisbury v. United States,* 690 F.2d 966, 973 (D.C.Cir. 1982); *Halkin v. Helms,* 598 F.2d 1, 7 (D.C. Cir.1978).

■ Secretary Weinberger's public affidavit, which was attached to defendant's motion for the protective order, outlines generally the interests defendant hopes to protect and the need for maintaining secrecy. Secretary Weinberger averred:

5. It is NSA's communications security (hereinafter COMSEC) mission principally that would be affected directly and adversely by disclosing the activities of the NSA in this litigation. The Agency's SIGINT mission would be less directly, but nevertheless adversely, affected as insight into U.S. cryptographic standards prompts foreign communicators to upgrade their cryptography. * * * Except for certain manuals and bulletins that contain no crypto-information, copies of which will be submitted to plaintiffs, I have concluded on the basis of my personal knowledge and on my personal review of additional information available to me in my official capacity, including particularly the classified affidavit of NSA's Deputy Director for Communications Security, that the production of these documents by the NSA even under protected circumstances will directly affect adversely matters of continuing military and diplomatic secrecy, thereby necessitating a formal claim of privilege. * * *

6. The COMSEC mission of the NSA is to provide equipment to our military and certain civilian agencies and departments, including to our diplomatic personnel and other national policy-makers, to assure that their communications are secure. For reasons that can be described more fully only in a classified affidavit [of Howard E. Rosenblum], the success of this mission is dependent upon the preservation of the details of NSA's sensitive equipments and descriptions thereof that could facilitate efforts by foreign intelligence officials to cryptanalyze official U.S. communications.

Affidavit at 2–3. The government has also submitted, and the court has reviewed *in camera,* the classified affidavit of Mr. Howard E. Rosenblum and the classified documentary film which that affidavit incorporated by reference. Based on the affidavits of both Secretary Weinberger and Mr. Rosenblum, the court finds that defendant validly invoked the state secrets privilege in

**162**

its motion to bar all discovery concerning cryptographic devices.

Since discovery is denied with regard to the cryptographic devices, all further proceedings with regard to these devices are suspended. If information concerning them becomes available before the accounting stage of this trial and plaintiffs are able to show a similarity between these devices and any others for which it has proven infringement, then plaintiffs may press their infringement claims for these devices at that stage in the manner permitted by *Marconi Wireless Telegraph Co. v. United States,* 99 Ct.Cl. 1 (1942), *modified,* 320 U.S. 1, 63 S.Ct. 1393, 87 L.Ed. 1731 *order on remand,* 100 Ct.Cl. 566 (1943); and *Pitcairn v. United States,* 212 Ct.Cl. 168, 547 F.2d 1106 (1976), *cert. denied,* 434 U.S. 1051, 98 S.Ct. 903, 54 L.Ed.2d 804 (1978). If on the other hand, the information regarding these cryptographic devices does not become available before the conclusion of the accounting phase of this trial, plaintiffs' claims regarding these devices will be dismissed without prejudice, and plaintiffs will be able to refile their petition when such information becomes available.

Defendant's motion for a protective order that no discovery be had regarding the function and operation of any cryptographic device is ALLOWED.

The effect of this order on any discovery that remains under plaintiffs' motion to produce is uncertain. Counsel are encouraged to proceed with discovery that has not been objected to, and plaintiffs may resubmit their motion to compel as to other portions of their production request, if necessary.