L. Curtis FOSTER and Zenith
Electronics Corporation,
Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 453–80C.

United States Claims Court.

June 10, 1987.

John M. Calimafde, New York City, for plaintiffs. Paul T. Meiklejohn and Hopgood, Calimafde, Kalil, Blaustein & Leiberman, New York City, of counsel.

James D. Stokes, Jr., Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant. Vito J. DiPietro, Michael J. Barrett, and Kathleen A. McGinn, of counsel.

## MEMORANDUM

MAYER, Judge.

At a closed hearing on October 2, 1986, the court gave a bench ruling granting defendant's motions for protective orders because of the state secrets privilege. The explanation for the ruling was recorded in a classified transcript and held under seal. Thereafter, defendant requested that the court issue a written memorandum on its ruling. To this end, defendant declassified the bench ruling. Because of security concerns, a perhaps more helpful statement of the factual background is not available. Nevertheless, the court will accede to the request and set out its reasons for granting the motions.

*Background*

█ Plaintiffs brought suit against the United States under the Invention Secrecy Act, 35 U.S.C. § 183, which permits claims for compensation based on government use of a patentable invention disclosed in a patent application under a secrecy order in the Patent and Trademark Office (PTO), or damage to a claimant caused by a secrecy order. The case involves three classified patent applications now under secrecy orders in the PTO, application numbers 800,-027 ('027), 399,730, and 674,059. When they were filed, the PTO imposed secrecy orders on them pursuant to 35 U.S.C. § 181 at the request of the Central Intelligence Agency (CIA). Because the secrecy orders have been maintained, the patent applications cannot issue as United States patents even though the PTO has determined that they disclose patentable subject matter as described in allowable claims of each application.

As a result of earlier proceedings, certain issues have been eliminated or narrowed. What is pertinent to this motion is that plaintiff Foster is left with a cause of action against defendant for government use or practice of the '027 claimed method in the United States since 1978, when Foster acquired rights in the patent application.

Plaintiffs sought discovery on this claim from the government, which they defined to mean the United States and all of its agencies and defense contractors. In response, defendant filed a motion for a protective order intended to encompass all prior, pending and future discovery and other requests by plaintiffs which call for information protected from disclosure by the state secrets privilege it claimed in the motion. In support of the motion, defendant submitted an unclassified public declaration pursuant to 28 U.S.C. § 1746 of William J. Casey, Director of Central Intelligence, for the purpose of asserting a formal claim of privilege to protect certain state secrets relating to the national defense and national security.

The public declaration stated that additional classified declarations which support the state secrets claim were also proffered to the court for its *in camera ex parte* review without the presence of plaintiffs or their counsel. According to defendant, the classified declarations explained why certain further discovery about alleged government use of the '027 application would necessarily expose state secrets. They also set forth the specific harm to the national security which would inevitably result from the exposure. Defendant said it could not reveal to plaintiffs or their counsel any part of these classified declarations or the identity of the declarants because that information is also subject to the state secrets privilege.

Plaintiffs responded that Director Casey's unclassified declaration includes conclusory statements insufficient to establish

the privilege as a matter of law. Furthermore, they said that while Casey's declaration "purports to encompass all matters of national intelligence activities … there is no record evidence which demonstrates that Mr. Casey has authority to assert the state secrets privilege on behalf of any Government Agency other than the CIA."

While that motion was pending, plaintiffs sought to depose Director Casey to "better define Mr. Casey's statutory authority, and his personal consideration of the facts relating to [the motion for a protective order]." Defendant resisted the deposition by a motion for a supplemental protective order, asserting that the mental processes of the heads of government agencies are not subject to examination by deposition; the deposition would be an unwarranted attempt by plaintiffs to inquire about the very subject absolutely protected by the state secrets privilege; and the Director's authority to assert here the state secrets privilege is a matter of law.

Finally, plaintiffs believed that their counsel was entitled to review defendant's *ex parte* submissions before the court ruled on the motions. They proposed that their lead counsel be permitted to inspect the *ex parte* material. Counsel had already received the necessary security approval for purposes of this litigation, had reviewed other classified documents, taken classified testimony, and had and would continue to adhere to all security standards for classified information in the case. After counsel's review of the material, he could provide his views to the court before its *in camera* review and final determination. Defendant objected to this request, as well.

*Discussion*

The National Security Act, 50 U.S.C. 403(d), establishes the Director of Central Intelligence as the coordinator of the United States intelligence community. Section 403(d)(3) specifically provides "[t]hat the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure." Executive Order 12333, 46 Fed.Reg. 59941, ¶¶ 1.5(h), (k) (1981), also emphasizes the Director's responsibility for coordinating and protecting intelligence sources and methods among federal entities.

The Supreme Court says that by this statutory language and accompanying legislative history "Congress vested in the Director of Central Intelligence very broad authority to protect all sources of intelligence information from disclosure." *CIA v. Sims*, 471 U.S. 159, 168, 105 S.Ct. 1881, 1887–1888, 85 L.Ed.2d 173 (1985); *see Miller v. Casey*, 730 F.2d 773, 778 (D.C.Cir. 1984). Although not absolute, this broad authority implies the power to prevent the disclosure of classified material from all departments and agencies of the government under the state secrets privilege. Therefore, defendant properly invoked the state secrets privilege because of Director Casey's role as coordinator of the intelligence community.

Defendant also properly invoked the state secrets privilege because the circumstances of the case did not permit a more detailed public affidavit by Casey. The Supreme Court first stated the procedural requirements for assertion of a state secrets claim in *United States v. Reynolds*, 345 U.S. 1, 7, 73 S.Ct. 528, 531–532, 97 L.Ed. 727 (1953): "There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." In each case, an opposing party's showing of need for the evidence will determine how far the court should probe in determining the validity of the asserted privilege. *Id.* at 11, 73 S.Ct. at 533–534. It is not to be invoked lightly; but once properly asserted the privilege is absolute. *See Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C.Cir.1983); *see also Langenegger v. United States*, 756 F.2d 1565, 1569 (Fed.Cir.1985). Defendant need only show a "reasonable danger" that national security may be damaged. *Reynolds*, 345 U.S. at 10, 73 S.Ct. at 533; *see Halkin v. Helms*, 598 F.2d 1, 9 (D.C.Cir.1978). The court should give significant deference to the agency affidavit asserting the privilege, but the validity of the assertion must

nonetheless be judicially assessed. *See Molerio v. F.B.I.*, 749 F.2d 815, 822 (D.C. Cir.1984). This requires walking a judicial tightrope because, according to *Reynolds*, the "court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect." 345 U.S. at 8, 73 S.Ct. at 532.

■ In our case, the Director's public affidavit asserted a formal claim of privilege as coordinator of the intelligence community after personal consideration of the matter claimed to be privileged. While, perhaps necessarily, vague, Casey's affidavit did explain that disclosure of certain requested information would risk "the disclosure of extremely sensitive and highly classified information." This indicates a "reasonable danger" that disclosure of the requested information could damage national security. Plaintiffs' need balanced against the potential danger that could accompany disclosure required the court to satisfy itself that the circumstances justified the assertion of the privilege, without delving too far into areas the privilege is designed to protect. For situations like this, *Ellsberg* proposed a test to determine the validity of the government's assertion, saying the trial judge should require "(1) that the formal claim of privilege be made on the public record and (2) that the government either (a) publicly explain in detail the kinds of injury to national security it seeks to avoid and the reason those harms would result from revelation of the requested information or (b) indicate why such an explanation would itself endanger national security." 709 F.2d at 63.

Plaintiffs are correct that Casey did not publicly explain in detail the potential dangers he sought to avoid, and that he did not explain sufficiently why an explanation would itself endanger national security. However, *Ellsberg* also said, "The government's public statement need be no more (and no less) specific than is practicable under the circumstances." *Id.* at 64. This "safety valve" is needed because of the difficulty in stating a state secrets claim

where all of the facts are, of necessity, not fully presented in open court.

■ Casey's affidavit did suggest danger from disclosure of sensitive and highly classified information. It is reasonable to believe that exposure of methods or an apparatus similar to plaintiffs' "Light Operated Information Techniques" could in some way disclose classified information. Requiring Casey to divulge more details in a public affidavit could disclose the very information the privilege is designed to protect. This is a sort of "Catch–22" situation, but protecting national security calls for caution.

■ Because of the generality of Casey's public affidavit, the court examined his more detailed classified affidavit and associated documents *in camera*, as contemplated by *Black v. Sheraton Corp.*, 564 F.2d 531, 545 (D.C.Cir.1977), an executive privilege case, and as was done, for example, in *Halkin v. Helms*, 690 F.2d 977, 985 (D.C.Cir.1982); *Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268, 269 (4th Cir.), *aff'd en banc*, 30 F.R.Serv.2d 1274 (1980); *Halkin v. Helms*, 598 F.2d at 5; and *American Telephone and Telegraph Co. v. United States*, 4 Cl.Ct. 157, 161 (1983). This examination showed a full explanation of the potential damage to national security and foreign relations and that invocation of the state secrets privilege was well founded.

When a court does conduct an *in camera* examination, as here, opposing counsel may properly be excluded. As was said in *Ellsberg*,

It is well settled that a trial judge called upon to assess the legitimacy of a state secrets privilege claim should not permit the requester's counsel to participate in an *in camera* examination of putatively privileged material.... The rationale for this rule is that our nation's security is too important to be entrusted to the good faith and circumspection of a litigant's lawyer (whose sense of obligation to his client is likely to strain his fidelity to his pledge of secrecy)....

709 F.2d at 61; *accord Salisbury v. United States*, 690 F.2d 966, 973 n. 3 (D.C.Cir.

1982); *American Telephone and Telegraph,* 4 Cl.Ct. at 161. Moreover, opposing counsel may be excluded even if they have a prior security clearance. *See Northrop Corp. v. McDonnell Douglas Corp.,* 751 F.2d 395, 401 (D.C.Cir.1984). So the court did not permit participation by plaintiffs' counsel.

As a general rule depositions are not to be taken of cabinet officers or other agency heads. *See Kyle Engineering Co. v. Kleppe,* 600 F.2d 226, 231 (9th Cir.1979); *Peoples v. United States Dep't of Agriculture,* 427 F.2d 561, 567 (D.C.Cir.1970). The rationale for this is that the mental impressions and mental processes of these officials are not to be probed. *United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 1004–1005, 85 L.Ed. 1429 (1941). Plaintiffs said they would not be probing the mental impressions and processes of Director Casey in deposing him. But they sought the deposition to have him "justify the assertion of State secrets privilege" and for "a proper determination of all motions involving matters of national security." Plaintiffs could not satisfy these goals without probing Casey's mental impressions and processes, and their inquiry goes directly to the matters for which he invoked the state secrets privilege. Therefore, the court directed that the deposition not be taken.