**Eugene Emerson CLIFT**

v.

**UNITED STATES of America.**

**Civ. No. N–76–37 (EBB).**

United States District Court,
D. Connecticut.

Dec. 30, 1991.

102

Eugene Emerson Clift, pro se.

H. Gordon Hall, Asst. U.S. Atty., New Haven, CT, for U.S.

## RULING ON DEFENDANT'S MOTION TO DISMISS

ELLEN B. BURNS, Chief Judge.

On January 23, 1976, the Plaintiff, Eugene Emerson Clift, brought this action under the Invention Secrecy Act, 35 U.S.C. § 183, alleging that the Government has used, in exact or similar form, a cryptographic encoding device that the Plaintiff has patented under U.S. Patent No. 3,495,038, entitled "Cryptographic System."

The facts of this case are set forth in *Clift v. United States,* 597 F.2d 826 (2d Cir.1979), and are repeated here in part. The Plaintiff filed a patent application for a cryptographic device in March 1968. On November 6, 1968, the Commissioner of Patents issued a secrecy order on the application under 35 U.S.C. § 181.[1] In February 1969 Clift filed an administrative claim for compensation under 35 U.S.C. § 183[2]

1. Section 181 states that whenever the head of the relevant United States Government agency determines that the
 publication or disclosure of the invention by the granting of a patent therefor would be detrimental to the national security, ... the Commissioner shall order that the invention be kept secret and shall withhold the grant of a patent for such period as the national interest requires, and notify the applicant thereof. 35 U.S.C. § 181. This section also provides for the annual renewal of the secrecy order, which may be rescinded "upon notification by the heads of the departments and the chief officers of the agencies who caused the order to be issued that the publication or disclosure of the invention is no longer deemed detrimental to the national security." *Id.*

2. Section 183 grants a right of compensation to applicants whose patents are withheld under 35

U.S.C. § 181. Affected parties are entitled "to apply to the head of any department or agency who caused the order to be issued for compensation for the damage caused by the order of secrecy and/or for the use of the invention by the Government, resulting from his disclosure." 35 U.S.C. § 183. Section 183 further provides that if a settlement is not reached, a
 claimant may bring suit against the United States in the United States Claims Court or in the District Court of the United States for the district in which such claimant is a resident for an amount which when added to the award shall constitute just compensation for the damage and/or use of the invention by the Government.
*Id.*

for damages caused by the imposition of the secrecy order and for the Government's use of the invention. The Government rescinded the secrecy order on June 12, 1969, and letters patent were issued in February 1970. On January 23, 1970, the Government denied the Plaintiff's administrative claim on the grounds that (i) the Government never used the invention and (ii) the Plaintiff had not submitted any evidence of damages resulting from the secrecy order.

In January 1976 the Plaintiff sued the United States under 35 U.S.C. § 183 for damages resulting from the imposition of the secrecy order and from the Government's appropriation of the invention.[3] The Government has steadfastly denied any use of Clift's invention.

In November 1977 the Plaintiff filed a request for production of documents under Fed.R.Civ.P. 34. The information requested concerned the origins and design of several types of cryptographic devices used by national security and military agencies of the Government.[4] Plaintiff contended that since these devices incorporated, in exact or similar form, his patented cryptographic system, he would need this information to prove his claim. Following the Defendant's refusal to produce the requested documents, the Plaintiff filed a motion to compel discovery under Fed.R.Civ.P. 37. In response, the Defendant, after pointing to the sensitive nature of the information, claimed that the information requested was both privileged on the basis of national security and prohibited from disclosure by statute. *See* 18 U.S.C. § 798.[5] In support of its claims, the Government submitted an affidavit from Vice Admiral Inman, the then Director of the National Security Agency, which averred that the disclosure of any information about the manufacture or design of its cryptographic devices would endanger the national security of the United States.

On September 15, 1977, this Court denied Plaintiff's motion to compel discovery based upon the Government's assertion of jeopardy to the national security, which was not outweighed by the Plaintiff's showing of need. *See Clift v. United States*, No. N–76–37 (EBB) (D.Conn. Sept. 15, 1978) (Mem.Decision Mot.Compel Disc. at 6–7). This Court also dismissed the action because of the Plaintiff's inability to maintain his case without access to the requested documents. *Id.* at 9–10.

The Second Circuit Court of Appeals affirmed the order denying the motion to compel discovery without prejudice and vacated the order dismissing the complaint. *Clift v. United States*, 597 F.2d 826, 830 (2d Cir.1979). In vacating the order of dismissal, the Second Circuit stated that Clift could perhaps proceed with his case without the requested documents or that, at some unforeseen point in time, the disclosure of the requested documents would no longer imperil the national security. *Id.* Moreover, the circuit court encouraged the Government to "be as forthcoming as it can be without risk to the national interest." *Id.*

On December 20, 1979, this Court made certain findings for the record and stayed discovery "until the earliest time at which the [G]overnment is able, consistent with 18 U.S.C. § 798, to furnish documents properly requested in this case." *Clift v. United States*, No. N–76–37 (D.Conn. Dec. 20, 1979) (Finding & Order at 2).

Since that time, over eleven years ago, this Court has waited for a *deus ex machina* to resolve the conflicting objectives of the Invention Secrecy Act and the state secrets privilege, which are "on the one

---

**3.** In later discovery proceedings, the Plaintiff appears to have withdrawn his claim for damages arising from the secrecy order and is proceeding solely with the claim that the Defendant has appropriated his invention. *See* (Def.'s Mem. Law Supp. Mot. Dismiss at 14).

**4.** *See Clift v. United States*, No. N–76–37 (EBB) (D.Conn. Sept. 15, 1978) (Mem.Decision Mot.Compel Disc. at 2–3).

**5.** This section makes criminal any disclosure of information related to code, cipher, or cryptographic systems of the United States to persons not authorized to receive them by the President of the United States or his designee.

hand, to preserve secrecy and, on the other, 'a strong concern that inventors be encouraged to discover inventions having military value and to submit them to the United States.' " *Clift v. United States,* 597 F.2d 826, 829 (2d Cir.1979) (quoting *Halpern v. United States,* 258 F.2d 36, 39 (2d Cir. 1958)). However, the issues at stake in this case, namely the Defendant's invocation of the state secrets privilege and the Plaintiff's inability to marshal additional nonprivileged evidence of infringement, remain essentially unchanged. The Government has, however, filed a motion to dismiss along with two supporting declarations.

On August 13, 1990, the Defendant filed the unclassified declaration of Secretary of Defense Richard B. Cheney, which, unlike the previous affidavit of Vice Admiral Inman, formally invoked the state secrets privilege. (Cheney Decl. ¶ 7). In his declaration, the Secretary averred that "information disclosing the technical characteristics of the manufactured or researched cryptographic systems constitutes military and state secrets[,] the disclosure of which could reasonably be expected to cause serious damage, potentially exceptionally grave damage, to the national security and foreign relations of the United States." (Cheney Decl. ¶ 3); *see also id.* at ¶ 4 ("The unauthorized disclosure of this U.S. cryptographic logic would seriously impair the communications security of the United States."); *id.* ("The disclosure of the manufactured cryptographic systems potentially puts at risk nearly every national secret over the last 30 years."); *id.* at ¶ 5 ("The disclosure of the technical information at issue in this case could devastate the ability of the U.S. to conduct signals intelligence.").

The Secretary also intimated that even if the United States discontinued the use of any (or all) of its present cryptographic encoding devices, it would continue to safeguard information about their design, construction, maintenance, and repair in order to preserve the secrecy of coded transmissions that may have been intercepted by foreign powers.[6]

In further support of the Secretary's invocation of the state secrets privilege, the Government, on August 13, 1990, filed the classified declaration of Vice Admiral W.O. Studeman, Director of the National Security Agency, for this Court's *in camera, ex parte* review. In his declaration, Vice Admiral Studeman further described the classified nature of the information sought and the improbability that it would be declassified in the foreseeable future.

The resolution of the Motion to Dismiss [7] ultimately depends upon the validity and effect of the Government's invocation of the state secrets privilege and the Plaintiff's ability to maintain a prima facie case if the information requested remains privileged.

## DISCUSSION

■ "The state secrets privilege is a common law evidentiary rule that protects information from discovery when disclosure would be inimical to the national security." *In re United States,* 872 F.2d 472, 475 (D.C.Cir.), *cert. dismissed sub nom. United States v. Albertson,* 493 U.S. 960, 110 S.Ct. 398, 107 L.Ed.2d 365 (1989). The privilege belongs only to the Government and may be raised even when the Government is not a party. *Zuckerbraun v. General Dynamics Corp.,* 935 F.2d 544, 546 (2d Cir.1991) (citation omitted). To invoke the privilege successfully, "[t]here must be a formal claim of privilege, lodged by the

---

6. When U.S. cryptography is compromised and ... rendered vulnerable to hostile exploitation, the secrets themselves are jeopardized and the national security impaired. Where communications security fails, critical national initiatives may be frustrated or totally defeated by adversaries. This applies even for ... systems no longer in use by the U.S. ... because, while many secret communications once protected ... may have been time sensi-

tive and are no longer secret, many of those secret communications remain highly classified and must be protected.
(Cheney Decl. ¶ 4).

7. In its moving papers, the Government requested that its motion be considered in the alternative as one for summary judgment. (Def.'s Mem.Law Supp.Mot.Dismiss at 4).

head of the department which has control over the matter, after actual personal consideration by that officer." *United States v. Reynolds*, 345 U.S. 1, 7–8, 73 S.Ct. 528, 532, 97 L.Ed. 727 (1953) (footnotes omitted). These formal requirements were met in the present case. In his declaration of August 10, 1990, Secretary of Defense Cheney formally invoked the privilege,[8] specifically reciting that he had reviewed and considered, among other things, a representative sample of the documents covered by the Plaintiff's request for production.[9] Upon review and after consideration of the nature of this case,[10] the Secretary concluded that disclosure would imperil the national security. (Cheney Decl. ¶ 3); *see also supra* at 104. This conclusion is in accord with the more detailed (and classified) declaration of Vice Admiral Studeman.

Compliance with the formal requirements is, however, not enough, for "[j]udicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." *United States v. Reynolds*, 345 U.S. at 9–10, 73 S.Ct. at 533. Hence, the "court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect." *Id.* at 8, 73 S.Ct. at 532 (footnotes omitted); *see also Molerio v. Federal Bureau of Investigation*, 749 F.2d 815, 822 (D.C.Cir.1984) ("To some degree at least, the validity of the [G]overnment's assertion must be judicially assessed.").

■ To discharge this obligation, while at the same time "according the 'utmost deference' to the executive's expertise in assessing privilege upon grounds of [national] security, a court must uphold the privilege if the [G]overnment shows that 'the information poses a reasonable danger to secrets of state.'" *In re United States*, 872 F.2d at 475 (quoting *Halkin v. Helms*, 598 F.2d 1, 9 (D.C.Cir.1978) (*Halkin I*) and *Halkin v. Helms*, 690 F.2d 977, 990 (D.C.Cir.1982) (*Halkin II*)); *see also United States v. Reynolds*, 345 U.S. at 10, 73 S.Ct. at 533 (The "occasion for the privilege is appropriate" when "there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged."). The circumstances in this case and the nature of the information sought are appropriate for this Court to sustain the Government's invocation of the state secrets privilege.

■ First, information about the design, construction, and use of the Government's cryptographic encoding devices falls within the scope of the state secrets privilege. *United States v. Reynolds*, 345 U.S. at 10–11, 73 S.Ct. at 533 ("military secrets"); *Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C.Cir.1983) ("The various harms, against which protection is sought by invocation of the privilege, include impairment of the nation's defense capabilities, disclosure of intelligence-gathering methods or capabilities, and disruption of diplomatic relations with foreign governments." (footnotes omitted)), *cert. denied*, 465 U.S.

8. *See* (Cheney Decl. ¶ 7).

9. *See* (Cheney Decl. ¶ 1) ("The statements in this declaration are based upon my personal knowledge, my review and consideration of a representative sample of technical descriptions of the cryptographic systems identified by the plaintiff, information available to me in my official capacity ..., and my review of the classified Declaration of Vice Admiral W.O. Studeman...."). The Secretary's review of a representative sample of the documents within the ambit of the Plaintiff's request for production does not affect the validity of the state secrets privilege in this case because the sole aim of the Plaintiff's discovery and suit is to establish a classified fact. *See Molerio v. Federal Bureau of*

*Investigation*, 749 F.2d 815, 821 (D.C.Cir.1984) (When "the whole object of the suit and of the discovery is to establish a fact that is a state secret, we are of the view that it suffices for the cabinet secretary to determine on personal consideration that disclosure of that fact would impair national security, whereupon compliance with the discovery request is excused in gross, without the necessity of examining individual documents." (footnote omitted)).

10. "I am advised that either the plaintiff, to prove his case, or the government, to defend against the claim, may need to introduce documentary or testimonial evidence disclosing the technical characteristics of these cryptographic systems." (Cheney Decl. ¶ 2).

1038, 104 S.Ct. 1316, 79 L.Ed.2d 712 (1984); *accord In re United States*, 872 F.2d at 476; *Molerio v. Federal Bureau of Investigation*, 749 F.2d at 820–21.

Second, on the basis of the unclassified declaration of Secretary Cheney[11] and the classified declaration of Vice Admiral Studeman,[12] the Court finds that the information requested, if disclosed, would pose a reasonable danger to the Nation's defense and intelligence-gathering capabilities and diplomatic relations. This finding, although supported sufficiently by the declarations of Secretary Cheney and Vice Admiral Studeman, is bolstered by 18 U.S.C. § 798, a statute that makes criminal any disclosure of information related to code, cipher, or cryptographic systems of the United States to persons not authorized to receive them by the President of the United States or his designee. Hence, Congress has statutorily expressed its opinion on the grave consequences that would flow from the unauthorized disclosure of the type of information requested here.

Furthermore, this is not a case where "[t]housands of bits and pieces of seemingly innocuous information can be analyzed and fitted into place to reveal with startling clarity how the unseen whole must operate." *Halkin v. Helms*, 598 F.2d 1, 8 (D.C.Cir.1978) (*Halkin I*). Rather, because the information about the design, construction, and use of the Government's cryptographic encoding devices is not seemingly innocuous, this Court does not require a sophisticated understanding of the intelligence profession to conclude that disclosure would imperil the national security. Indeed, this is one of those situations where "the very question upon which the case turns is itself a state secret." *Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d

1236, 1239 n. 3 (4th Cir.1985). Thus, because a reasonable danger to the security interests of the United States has been established, a review in chambers of the actual documents requested is unwarranted and unnecessary to sustain the Government's invocation of the state secrets privilege. *United States v. Reynolds*, 345 U.S. at 10, 73 S.Ct. at 533 (Upon finding, "from all the circumstances of the case," a reasonable danger to national security, "the court should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers.").[13]

■■■■■ Once the privilege is successfully invoked, it is absolute. Although it "should not be lightly accepted, ... even the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake." *United States v. Reynolds*, 345 U.S. at 11, 73 S.Ct. at 533 (citing in a footnote *Totten v. United States*, 92 U.S. 105, 23 L.Ed. 605 (1875)).[14] As such, a "party's need for the information is not a factor in considering whether the privilege will apply." *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 399 (D.C.Cir.1984). Rather, a party's need for the information, which in this case is great indeed, is only considered when determining "how far the court should probe in satisfying itself that the occasion for invoking the privilege is appropriate." *United States v. Reynolds*, 345 U.S. at 11, 73 S.Ct. at 533; *see also Halkin II*, 690 F.2d at 990. In this case, the Plaintiff's need for the information was considered in determining how far this Court should probe; yet, because it is apparent from all of the circum-

---

**11.** *See* (Cheney Decl. ¶¶ 3–5).

**12.** *Ex parte, in camera* review of declarations is appropriate when disclosure of the information contained therein could jeopardize the national security. *See, e.g., American Tel. & Tel. Co. v. United States*, 4 Cl.Ct. 157, 161 (1983) (citations omitted); *Foster v. United States*, 12 Cl.Ct. 492, 495–96 (1987).

**13.** *See also Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1369 (4th Cir.) ("In our own cham-

bers, we are ill equipped to provide the kind of security highly sensitive information should have."), *cert. denied*, 421 U.S. 908, 95 S.Ct. 1555, 43 L.Ed.2d 772 (1975).

**14.** This is so "because the 'balance has already been struck' in favor of protecting secrets of state over the interests of a particular litigant." *In re United States*, 872 F.2d at 476 (quoting *Halkin v. Helms*, 690 F.2d 977, 990 (D.C.Cir. 1982) (*Halkin II*)).

stances discussed above that there is a reasonable danger that disclosure of the information in question would pose a threat to national security, further inquiry into the application for the privilege, including *in camera* review, is unnecessary. *Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544, 548 (2d Cir.1991).

In *American Tel. & Tel. Co. v. United States*, 4 Cl.Ct. 157 (1983), facts strikingly similar to those here were presented on the Government's motion for a protective order. In that case, the plaintiffs sought compensation from the Government under 35 U.S.C. § 183 for patent infringement of their cryptographic encoding device. After sustaining the Government's invocation of the state secrets privilege, the United States Claims Court granted the motion to bar discovery regarding the design and operation of any cryptographic device.[15] As in this case, the court found it unnecessary in the circumstances to review each contested document before upholding the assertion of the privilege. *American Tel. & Tel. Co.*, 4 Cl.Ct. at 161 ("*In camera* review of each contested document, therefore, is not required if the court can determine, from other evidence and the circumstances, that the privilege was validly invoked." (citation omitted)).

■ The effect that a successful invocation of the privilege has on a case varies; the court must invariably "consider wheth-

er and how the case may proceed in light of the privilege." *Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d 1236, 1243 (4th Cir. 1985). At the least, the privilege removes the sensitive information from the case completely. *In re United States*, 872 F.2d at 476. If the plaintiff is unable to establish a prima facie case without the privileged information, *id.*, or if the state secrets are "so central to the subject matter of the litigation that any attempt to proceed will threaten disclosure of the privileged matters," dismissal of the case is appropriate. *Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d at 1241–42 (citing *Totten v. United States*, 92 U.S. 105, 23 L.Ed. 605 (1875)). Similarly, if the information is essential to the defense, then summary judgment against the plaintiff may be appropriate. *In re United States*, 872 F.2d at 476; *see, e.g., Molerio v. Federal Bureau of Investigation*, 749 F.2d 815, 825 (D.C.Cir.1984).[16] If, however, the plaintiff has sufficient admissible evidence to allow a judgment in his favor without the privileged information, the case may go forward. *Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268, 271–72 (4th Cir.1980) (en banc).[17]

■ Since the Plaintiff will not have access to information necessary to present a prima facie case, this case must be dismissed. This is one of those situations

---

**15.** In making this determination, the Claims Court reviewed the unclassified affidavit of Secretary of Defense Caspar W. Weinberger, the classified affidavit of Howard E. Rosenblum (the National Security Agency's Deputy Director for Communications Security), and a classified documentary film that Deputy Director Rosenblum's affidavit incorporated by reference.

**16.** Although "[t]he precise rule under which dismissal should occur is not entirely clear," *Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544, 547 (2d Cir.1991), the Second Circuit explained as follows that Fed.R.Civ.P. 56 is most appropriate in either situation:

Dismissal under Fed.R.Civ.P. 12(b)(6) seems inappropriate because the complaint will typically state a claim for relief under notice pleading rules. Where the effect of the invocation of the privilege is to prevent the plaintiff from establishing a prima facie case, the dismissal is probably most appropriate under Rule 56 on the ground that plaintiff, who

bears the burden of proof, lacks sufficient evidence to carry that burden. Where the court determines that the privilege will prevent the defendant from establishing a valid defense, a Rule 56 dismissal may be appropriate on the ground that plaintiff's evidence is legally insufficient on the whole case.

*Zuckerbraun*, 935 F.2d at 547 (citation omitted).

**17.** In *Farnsworth Cannon*, 635 F.2d at 274, the Fourth Circuit discussed as follows a plaintiff's ability to proceed without privileged material:

the existence of the [state secrets] privilege does not bar a factfinder from reaching a decision based on reasonable inferences about what those processes probably were, so long as the inferences are adequately grounded on nonprivileged information which is in evidence. The superiority of more direct, but unavailable proof does not invalidate findings of fact rationally based on the circumstantial evidence which is before the factfinder.

where "the very question upon which the case turns is itself a state secret." *Fitzgerald*, 776 F.2d at 1239 n. 3. As the Defendant convincingly argues, maintenance of the Plaintiff's claim of Government use under 35 U.S.C. § 183, or, alternatively, maintenance of the Government's defense of non-use, would require the disclosure of state secrets to unauthorized persons, even during an *in camera* proceeding.[18] In order to prove his allegations of Government use of his invention, the Plaintiff would necessarily need to conduct a detailed, technical, and comparative examination of the design, development, construction, and deployment of the entire range of the Government's cryptographic technology. *Cf. Marconi Wireless Tel. Co. v. United States*, 99 Ct.Cl. 1 (1942), *modified*, 320 U.S. 1, 63 S.Ct. 1393, 87 L.Ed. 1731 (1943); *Pitcairn v. United States*, 212 Ct.Cl. 168, 547 F.2d 1106 (1976), *cert. denied*, 434 U.S. 1051, 98 S.Ct. 903, 54 L.Ed.2d 804 (1978) (cited in *American Tel. & Tel. Co. v. United States*, 4 Cl.Ct. 157, 162 (1983)). According to Secretary Cheney, "[t]echnical descriptions of the manufactured or researched cryptographic systems, including information about their design, construction, maintenance, or repair, are classified." (Cheney Decl. ¶ 2). Without access to that privileged information, and upon examination of his meager non-privileged evidence of use, the Plaintiff's case would proceed nowhere.

In the over eleven years since this Court's dismissal of the case was vacated, the Plaintiff continues to rely on several items of evidence that independently or collectively do not establish a prima facie case of Government use. The evidence consists of: (i) alleged inconsistencies in the Defendant's assertions about the validity and alleged use of the Plaintiff's patented inven-

tion; (ii) a published report that a captured United States vessel, the *U.S.S. Pueblo*, transmitted encoded information at the rate of 100 words per minute (Plaintiff alleges that at the time only his device could transmit at that speed); (iii) a published report concerning the use of a cryptographic encoding device at the United States Embassy in Cambodia; (iv) a published statement that the future will place greater emphasis on communications security; and (v) a published report on the spy trial of a former C.I.A. agent. *See Clift v. United States*, No. N–76–37 (EBB) (D.Conn. Sept. 15, 1978) (Mem.Decision Mot.Compel Disc. at 5–6). These allegations have not been developed further over the years, and they would be of little value at trial without precise evidence about the design, manufacture, operation, and deployment of the cryptographic devices employed (now or in the past) by the Government. *Cf. Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544, 547 (2d Cir. 1991) (The liability of weapons manufacturers for the wrongful death of sailors aboard the *U.S.S. Stark* after the Iraqi F–1 Mirage fighter jet attack "cannot be resolved or even put in dispute without access to data regarding the design, manufacture, performance, functional characteristics, and testing of these systems and the rules of engagement under which the Stark was operating.").

As the Government's memorandum explains (Def.'s Mem.Law Supp.Mot.Dismiss at 14–15), the probative value of the Plaintiff's evidence is based upon assumptions, which, even if admissible, are insufficient to establish a reasonable inference of Government use upon which this Court can find facts "rationally based on the circumstantial evidence" that would permit a trial to proceed despite the absence of privileged

---

**18.** Even if the President or the Secretary of Defense would be willing, at his discretion (and in order to satisfy the literal language of 18 U.S.C. § 798), to obtain security clearance for the Court and its necessary personnel, *see, e.g., Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268, 275–76 (4th Cir.1980) (en banc); *Loral Corp. v. McDonnell Douglas Corp.*, 558 F.2d 1130, 1132 (2d Cir.1977), Mr. Clift, "who admittedly no longer holds clearances," *Clift v. United*

*States*, 597 F.2d at 829, is an unauthorized person who would present a risk to the national security if the requested cryptographic information was made available to him in the course of an *in camera* proceeding. *See* (Def.'s Mem. Law Supp. Mot. Dismiss at 16) ("[S]ubstantial, even grave[,] harm could flow from [Mr. Clift's] exposure to the technical details [that] would necessarily be disclosed in a trial of this matter."). *See generally* (Cheney Decl.); (Studeman Decl.).

information. *Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d at 274. Thus, whether "Mr. Clift has not conceded that without the requested documents he would be unable to proceed, however difficult it might be to do so," *Clift v. United States*, 597 F.2d 826, 830 (2d Cir.1979), is irrelevant because it is this Court's duty, not the Plaintiff's, to examine the proffered non-privileged information in determining whether the case may proceed.

 Because the state secrets privilege, when validly invoked, removes the evidence from the case, and because the Plaintiff cannot marshal any nonprivileged circumstantial evidence to establish a prima facie case, the only way to adjudicate this case (whether publicly or *in camera*) is to hold that the Invention Secrecy Act waives the state secrets privilege, which is a conclusion that this Court is not prepared to make. *See American Tel. & Tel. Co. v. United States*, 4 Cl.Ct. 157, 160 (1983) ("As an initial matter, this court rejects plaintiffs' assertion that the Invention Secrecy Act ... is a waiver of the state secrets privilege." (footnote omitted)).

In *Halpern v. United States*, 258 F.2d 36, 43 (2d Cir.1958), the Second Circuit discussed as follows the propriety of holding an *in camera* proceeding for claims brought under the Invention Secrecy Act during the pendency of a secrecy order on the patent application:

> Congress must have foreseen that a public trial was an impossibility in cases of this kind, and in vesting jurisdiction in the district court to entertain such an action it implicitly empowered the district court to tailor the procedure within reasonable limits to meet individual situations.

By interpreting the Act in this way, the court held in the circumstances that the district court should conduct an *in camera*

trial "if in its opinion such a proceeding can be held without running any serious risk of divulgence of military secrets." *Id.* Moreover, the statutory cause of action contained in the Act "must be viewed as waiving the privilege." *Id.*

The United States Claims Court interpreted this waiver language as "dicta," saying that the *"Halpern* court's holding was much more limited and closely tailored to that case's facts." *American Tel. & Tel. Co. v. United States*, 4 Cl.Ct. at 160 n. 2.[19] Most significant to the Claims Court's conclusion, and to the Government's argument in this case, was the *Halpern* court's finding that the "appellant is not seeking to obtain secret information which he does not possess." *Halpern*, 258 F.2d at 44. Because of that fact, the *Halpern* court was apparently faced only with the more limited danger associated with a trial *in camera*, namely, the inadvertent disclosure of classified information to unauthorized persons (other than the parties and the court) for want of adequate security measures in chambers, which is why in that case the district court was ordered on remand to conduct an *in camera* trial only if one could be administered safely. *Halpern*, 258 F.2d at 44; *see also supra* n. 13. In addition, the *Halpern* court distinguished *United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953), and *Totten v. United States*, 92 U.S. 105, 23 L.Ed. 605 (1875), because, *inter alia*, they were "attempts to obtain unauthorized disclosures of secret information." *Halpern*, 258 F.2d at 44. In both *American Tel. & Tel. Co.* and this case, however, the plaintiffs did attempt to obtain access to secret cryptographic information to which they were not entitled. This factual difference undercuts the sweeping waiver language of *Halpern*.

In *Clift v. United States*, 597 F.2d 826, 829 (2d Cir.1979), however, the Second Cir-

---

**19.** The Claims Court also relied upon other language of the *Halpern* decision which qualified the conclusion that the Invention Secrecy Act waived the state secrets privilege:

The court stated, "[A]ny such waiver is dependent upon the availability and adequacy of other methods of protecting the overriding interest of national security during the course

of a trial." [*Halpern*, 258 F.2d] at 43. And "the privilege ... is inapplicable when disclosure to court personnel in an *in camera* proceeding will not make the information public or endanger the national security." *Id.* at 44. *American Tel. & Tel. Co. v. United States*, 4 Cl.Ct. at 160 n. 2.

cuit found, contrary to the findings of the court in *Halpern*, that Mr. Halpern would have had access to classified information that he did not already possess. *See id.* ("While Halpern knew his own invention and apparently had some knowledge of the modifications, he did not know how extensively it was used, and these facts were state secrets."). Thus, it implicitly interpreted *Halpern* to mean exactly what it said: The Invention Secrecy Act waived the state secrets privilege, but only to determine the extent of the Government's conceded use of Halpern's particular invention, and only as long as the district court could safely conduct an *in camera* trial. Although *Clift* implicitly recognized that the privilege was waived in *Halpern*, it neither ordered on remand an *in camera* trial in this case nor concurred explicitly with *Halpern* on the waiver issue. Instead, the Second Circuit upheld the denial of discovery suggesting the entry of an appropriate stay, because *"[i]n camera* discovery would do no good unless any favorable results could be communicated to Mr. Clift, who admittedly no longer holds clearances." *Clift*, 597 F.2d at 829. That result supports this Court's conclusion that the Invention Secrecy Act does not waive the state secrets privilege, because if it did, the Second Circuit would have ordered a trial *in camera* rather than suggesting a stay "to wait and see whether improvements in the art or other developments might make it feasible for the Government to produce some documents under some safeguards." *Clift*, 597 F.2d at 830.

It is possible that the Second Circuit in *Clift* would only recognize a limited waiver of the privilege for the parties, the Court, and all necessary court personnel to determine the extent of use under 35 U.S.C. § 183 when there is a tacit or explicit concession of use by the Government, as in *Halpern*. Also possible, though improbable, is that the privilege would be waived without the Government's concession of use if there is initially sufficient circumstantial evidence of use to warrant both the

abrogation of the privilege and an *in camera* trial with all necessary safeguards to prevent public (or other unauthorized) disclosure of sensitive information. This, however, would turn an absolute privilege into a qualified one, which is a result unsupported by precedent or statute. Even if that is the case, neither situation is present here; the Government has consistently denied any use of Clift's cryptographic system—"a denial whose validity is reinforced by the lifting of the secrecy order only eight months after its issuance," *Clift*, 597 F.2d at 829, and Clift has not marshalled any persuasive nonprivileged evidence of use.

 Thus, even if there is a limited waiver of privilege to determine only the extent of the Government's conceded use of a particular invention, as in *Halpern*, the Invention Secrecy Act should not be interpreted to waive the privilege in circumstances such as this case where the Government has denied use, and to determine the fact and extent of use would require scrutiny of the entire range of the Government's cryptographic technology. As the Claims Court explained in *American Tel. & Tel. Co.*, 4 Cl.Ct. at 160 (citing and quoting *United States v. Reynolds*, 345 U.S. 1, 6–7, 73 S.Ct. 528, 531–32, 97 L.Ed. 727 (1953)), merely granting plaintiffs a cause of action under 35 U.S.C. § 183 does not, *ipso facto*, waive the Government's right to assert a "well established" evidentiary privilege, especially one that has "constitutional overtones," *United States v. Reynolds*, 345 U.S. at 6 & n. 9, 73 S.Ct. at 531 & n. 9, and thus "head[s] the list" of those presently recognized. *Halkin v. Helms*, 598 F.2d 1, 7 (D.C.Cir.1978) (*Halkin I*). In support of its conclusion that the state secrets privilege is not waived by the Invention Secrecy Act, the Claims Court cited *United States v. Reynolds*, 345 U.S. 1, 6, 73 S.Ct. 528, 531, 97 L.Ed. 727 (1953), a case in which a "similar argument concerning the Federal Tort Claims Act was rejected." *American Tel. & Tel. Co.*, 4 Cl.Ct. at 160.[20] In view of the

---

**20.** Actually, the Supreme Court in *Reynolds* did not decide whether the executive power to re-

fuse discovery was waived by the Federal Tort Claims Act, *Reynolds*, 345 U.S. at 6, 73 S.Ct. at

Claims Court's reasoning and this Court's interpretation of the limited impact of *Halpern*, the provisions of the Invention Secrecy Act will not be construed to waive the state secrets privilege so as to allow an *in camera* trial of this case. For that reason and for the reasons stated previously, this case must be dismissed.

This Court has considered the draconian result of dismissal without allowing the Plaintiff his day in court. *Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d 1236, 1242 (4th Cir.1985) ("[D]enial of the forum provided under the Constitution for the resolution of disputes, U.S. Const. art. III, § 2, is a drastic remedy that has rarely been invoked." (citations omitted)); *accord In re United States*, 872 F.2d at 477. In this case, the Plaintiff has expended a great deal of time and energy in pursuing his claim. And to the extent that litigants proceeding under 35 U.S.C. § 183 encounter the state secrets privilege so often that their claims are functionally barred in most cases, Congress and the President must repair the legislation in light of existing rules of privilege. Nevertheless, (i) because the state secrets privilege was properly invoked by the Government's demonstration that any discovery regarding the development, manufacture, design, and use of its cryptographic encoding devices would pose a reasonable danger to the national security; (ii) because the privilege is absolute and removes the evidence completely from the case; (iii) because the privileged information lies at the core of this litigation and affects critically both the Plaintiff's ability to maintain a prima facie case (in the absence of reliable nonprivileged evidence of use) and the Government's ability to defend itself; (iv) because the necessary information will remain classified for the

foreseeable future; and (v) because the Invention Secrecy Act does not waive the state secrets privilege to permit an *in camera* trial under the facts and circumstances presented here, this case must be dismissed.

### CONCLUSION

For all of the foregoing reasons, the Government's motion to dismiss, or in the alternative, for summary judgment, is granted.

SO ORDERED.

---

531; instead, the Court framed the issue as one only of privilege. The Court stated:

> Since Rule 34 compels production only of matters "not privileged," the essential question is whether there was a valid claim of privilege under the Rule. We hold that there was, and that, therefore, the judgment below subjected the United States to liability on terms to which Congress did not consent by the Tort Claims Act.

> We think it should be clear that the term "not privileged," as used in Rule 34, refers to "privileges" as that term is understood in the law of evidence. When the Secretary ... lodged his formal "Claim of Privilege," he attempted therein to invoke the privilege against revealing military secrets, a privilege which is well established in the law of evidence.

*Reynolds*, 345 U.S. at 6-7, 73 S.Ct. at 531 (footnote omitted).